### Ex Parte Jim Wade, et al.

No. 5888.    Decided June 16, 1920.

**Habeas Corpus—Bail—Practice on Appeal.**

Where the undisputed facts justified in references that might be drawn by a jury favorable to the relators, and where the facts were in conflict such as on the whole record did not warrant the conclusion by the trial judge that the proof showed the defendants guilty of a capital crime and that the proof was evident, bail is granted.

Appeal from the District Court of Waller. Tried below before the Honorable J. B. Harvey.

Appeal from a Habeas Corpus proceedings, denying bail.

The opinion states the case.

No brief on file for appellant.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

MORROW, JUDGE.—This is an appeal from an order of the district judge refusing bail. Relators are charged by complaint with the murder of Gerald Sellers. A voluminous statement of facts is before us, but the evidence will not be discussed in detail. In substance, it appears that some weeks prior to the homicide a quarrel took place between Nathan Sellers, the father of the deceased, and the relator Jim Wade. Subsequently, Nathan Sellers fired at Jim Wade several shots, one of them taking effect in his back, and at the time of the homicide, the record suggests the existence of ill-feeling between Nathan Sellers and the relator Jim Wade. On the night preceding the difficulty in which the deceased lost his life, Jim Wade and Stewart Wade spent the night in a house belonging to Jim Wade, situated in a village in which Nathan Sellers with his family, including deceased, resided, the parties being neighbors. Early in the morning Nathan Sellers while, according to his testimony, looking for his calf, passed near the home of relators, and Jim Wade, observing him, and, as he claims, desiring to talk with Nathan Sellars with a view of reaching an understanding with him, went out of his house, informing his brother Stewart Wade of his purpose. When he reached a point about one hundred yards distant from Nathan Sellars shots were exchanged between them, each of them firing a number of times, the evidence being conflicting as to who was the aggressor, the State's testimony going to show that Jim Wade fired twice before Sellars began, the relators' testimony indicating that Sellars began to draw his gun on observing Jim Wade, and that they fired the first shot about the same time. Neither of them was injured, but during the duel the wife of Nathan Sellars called to her son, the deceased and told him they were shooting his father. The deceased, arming himself, left the house and was met by the relator Stewart Wade. As they met. according to the testimony of both the State and the relators, Stewart Wade said to deceased: "Let's not have anything to do with this. We are too good friends." There is a conflict as to the remainder of the conversation, but the evidence is undisputed that both began firing, deceased stepping behind a barn, from which he fired a number of shots, both of the relators, according to some of the testimony, engaging in the conflict with him. and he finally received two wounds, from one of which he later died.

The State, relying upon various circumstances. advances the theory that the record discloses against the relators conspiracy and

premeditation. Stewart Wade contends that the evidence points to no wrongful participation in the conflict on his part, insisting that he but responded to the aggressive acts of the deceased On the undisputed facts there are inferences that might be drawn by a jury favorable to the relators, and on the facts not undisputed there is a conflict of evidence such as on the whole record did not warrant the conclusion by the trial judge that the proof that relators were guilty of a capital crime was evident.

The order denying bail is therefore reversed, and bail granted to each of the relators in the sum of $10,000, upon the making of which under the terms of law with sufficient surety, their discharge is ordered.

*Bail granted.*